## Commonwealth v. Braun

258

*Edward J. Blatt,* district attorney, for Common-wealth.

*Benjamin R. Coppolo,* for defendant.

TRAMBLEY, P. J., March 4, 1954.—This is an appeal from a summary conviction before a justice of the peace. Defendant, Ambrose Braun, was charged with wilfully and unlawfully killing a bear for property damage when not legally entitled to do same in violation of section 724 of the Pennsylvania Game Laws of June 3, 1937, P. L. 1225, 34 PS §1311.724.

Section 724 provides, inter alia, that certain animals, including bears, may be legally killed by any person if found actually engaged in the material destruction of cultivated crops, etc., by any person as defined in the act. The same section then defines the word "person" to mean any person actually residing upon and cultivating, as a means of gaining a livelihood, any lands for general farm crop purposes, commercial trucking, or fruit orchard or nursery being regularly maintained for commercial purposes, as either the owner or lessee of such lands, or a member of his family actually residing upon and regularly assisting in the cultivation thereof, or any employe of such owner or lessee hired on a monthly or annual basis and regularly assisting in the cultivation thereof, etc., the rest of the definition not being pertinent to this case.

A hearing de novo was held in the Court of Quarter Sessions of Elk County on December 21, 1953, at which

testimony was presented by the Commonwealth and by defendant.

The facts as shown by the testimony were that the father and mother of defendant owned a farm in Elk County, on which they raised, among other things, corn. They also had a small orchard and had some livestock and chickens on the premises. The livestock consisted of cows and pigs to the number of 10 altogether. Defendant did not reside with his parents, but did help them harvest their crops. As many as five bears had visited the farm at one time and trampled and ate the corn to the extent that it was necessary to harvest it before it was fully matured in order to save it from complete destruction. The bears also ate apples from the trees in the orchard. The bears were seen in the yard on many occasions and on one occasion when the mother of defendant opened the door one of the bears was standing on its hind legs about 12 feet from the door.

The father of defendant is 69 years of age and the mother is 65 years of age. The father was unable to handle firearms and the mother only knew how to handle a 22 rifle. She had fired at the bear with this 22 rifle but either did not hit it or the bullets had no effect on the bear.

Defendant's mother called him and told him that in addition to desiring to stop the destruction of their crops she and her husband were frightened because of the bears and asked him to call the game protector and see what could be done about it.

The son called the game protector, who explained to him that under the conditions here presented the bear could be killed. The game protector made no further statement and the son, therefore, presumed that he meant that anyone could kill the bear. The son then went to his parent's farm and shot the bear. Notice was given to the game protector that the bear had been shot, the game protector went out to the

farm the next day and talked to defendant's parents and later the same day talked to defendant and on the basis of information he received from them, he filed an information charging defendant with illegally killing the bear.

At a hearing held before a justice of the peace on November 19, 1953, defendant was found guilty and was sentenced to pay the costs of prosecution and a fine of $200. Defendant thereupon appealed to the Court of Quarter Sessions of Elk County.

The court is of the opinion that this defendant should not have been arrested. Technically he may have been guilty of violating the law as it stands but under the circumstances here both from the viewpoint of a son who loves his parents and of the advice given him by the game protector we think it would be a flagrant miscarriage of justice if this defendant were found guilty. We further are of the opinion that this section of the law is unconstitutional in that it deprives a man of the right to protect his life, home and property in what, under the circumstances in this case, was the most natural thing to do, when, being unable to protect himself, his home and his wife he called upon his son to assist him. That there was no intent to break the law is evident from the fact that the son called the game protector, requesting advice as to what could be done. A man intent on violating the law would certainly not have called attention to himself by such an act.

We are further of the opinion that defendant was misled by the ambiguous and indefinite information given by the game protector when he merely stated that "the bear can be killed" without explaining further as to the manner of the killing, and by whom it was to be done. Under the evidence here it was only natural for defendant to assume from the information given him by the game protector that he had a perfect right to kill the bear.

We also think this act violates article I, sec. 13, of the Constitution of Pennsylvania which prohibits the imposition of excessive fines and penalties. We do not believe there is any justification for a law which imposes a severe penalty on a person for performing an act of love and duty towards his parents. It is absurd to think that our legislature had any such thought in mind when this law was enacted.

We further think that by using common sense and good judgment the game protector would have realized these facts and concluded that this was not the purpose or intent of the act and that no prosecution should have been instituted.

The court, therefore, makes the following

*Order*

Now, March 4, 1954, defendant is found not guilty, he is hereby discharged and his bail is released and discharged, the costs to be paid by the County of Elk.